A04A1852. DANOS et al. v. THOMPSON.
(611 SE2d 678)

RUFFIN, Chief Judge.
Sarah Thompson and other homeowners in the Thunder Point Subdivision (collectively, "homeowners") sought, inter alia, to set

---

aside a quitclaim deed that transferred lakefront property from Peter Danos to his brother, Thomas (collectively, "the Danoses"). The homeowners maintained that the transfer of property violated the subdivision's restrictive covenants. The homeowners also sought to enjoin the Danoses from submitting future applications to the U. S. Army Corps of Engineers for a dock permit.

The parties filed cross-motions for summary judgment, and the trial court granted the homeowners' motion and denied the Danoses' motion. The Danoses appeal, arguing that they, not the homeowners, were entitled to judgment as a matter of law. The Danoses also assert that the trial court erred in enjoining them from using their boat docks and from applying for future dock permits. For reasons that follow, we affirm in part and reverse in part.

A trial court properly grants summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] "In ruling on a motion for summary judgment, the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the non-movant. Our review is de novo."[2]

So viewed, the record shows that Peter Danos purchased lot 6 in Thunder Point Subdivision, which is a lakefront lot on Lake Lanier. Peter Danos also purchased lots 44 and 45 from another subdivision, Point View Landing. Although lots 44 and 45 were in another subdivision, both lots bordered lot 6 in Thunder Point. Several months after purchasing the lots, Peter Danos transferred by quitclaim deed the western portion of lot 6 to Thomas Danos. The eastern portion, which Peter Danos retained, provided him access to the lake from lots 44 and 45. Thus, both Peter and Thomas Danos obtained lake access from their respective lots. The two brothers then applied for, and obtained, permits from the U. S. Army Corps of Engineers to build docks on their lots.

After construction of the two docks, the homeowners filed suit to set aside the quitclaim deed between the Danoses, alleging that the conveyance constituted a "resubdivision" of lot 6, which violated Thunder Point's restrictive covenants. The homeowners also petitioned the court to rescind the boat dock permits and to enjoin the Danoses from obtaining permits in the future. After the parties moved for summary judgment, the trial court found that the homeowners were entitled to judgment as a matter of law on their claim that the transfer of a portion of lot 6 violated Thunder Point's restrictive covenants. Thus, the court set aside the quitclaim deed,

---

[1] See *Duffy v. The Landings Assn.*, 245 Ga. App. 104 (536 SE2d 758) (2000).
[2] Id.

enjoined the Danoses' use of the dock, and enjoined them from reapplying for future permits. This appeal ensued.

1. On appeal, the Danoses argue that the trial court erred in interpreting the restrictive covenants in such a way as to vitiate the transfer of property. According to the Danoses, the covenants, which must be strictly construed, expressly authorize the transfer of property to an adjoining property.

The construction of a contract is a matter for the courts, and it involves a three-step process.[3]

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[4]

The covenant at issue provides, in pertinent part, that "[n]o residential lot shall be resubdivided into building plots of lesser size than the original lot, except that part of a lot may be sold to the owner of the adjoining lot in which event, the part sold shall thereafter be considered a part of such adjoining lot."

The Danoses argue that they did not resubdivide the lot, but merely added a portion of the lot to an adjoining lot, which they contend is permitted by the covenants. However, since Thomas never owned an adjoining lot, we fail to see how the transfer of property falls within the ambit of this provision. Even if he owned one of the Point View Landing lots, we agree with the homeowners that such transfer is prohibited. In construing the covenants, we look to the document as a whole.[5] And the covenants expressly apply to "Thunder Point Subdivision, the same being a subdivision of all those certain lots, tracts or parcels of land (hereinafter referred to collectively as 'Lot or Lots')." In other words, the document essentially defines "lots" as

---

[3] See *White v. Kaminsky*, 271 Ga. App. 719 (610 SE2d 542) (2005).
[4] (Punctuation omitted.) Id.
[5] See *Licker v. Harkleroad*, 252 Ga. App. 872, 874 (2) (a) (558 SE2d 31) (2001).

those contained within the subdivision. Thus, the covenant simply permits a Thunder Point property owner to sell a portion of land to an adjoining Thunder Point property owner.

Furthermore, this construction of the covenant carries into effect the intention of the parties, which is to control, within limits, how the property developed as Thunder Point Subdivision is used.[6] If we construed the covenant as the Danoses request — as permitting the transfer of property to outside property owners — the property would no longer be subject to the covenants. It follows that the trial court did not err in construing the covenants.

2. Nonetheless, we do agree that the trial court abused its discretion by enjoining the Danoses from using "the boat dock . . . and . . . from reapplying for a future boatdock permit from the Corps of Engineers."[7] " 'A trial judge manifestly abuses his discretion when he grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity.' "[8]

Here, the trial court apparently accepted the homeowners' argument that the multiple "docks caused undue congestion in the cove and . . . decreased the value and utility of their property." However, the covenants merely provide that the location of boat docks must be approved by the owners; the covenants do not limit the number of docks on a property. Equity permits a court to enjoin an act "which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law."[9] Since the Danoses can seek, and possibly obtain, approval from the owners to build additional docks, it is neither illegal nor contrary to good conscience to permit them to do so. Similarly, we see no basis for prohibiting their use of the docks.[10] Accordingly, we find no evidentiary basis to support the trial court's grant of injunctive relief, and that portion of the order granting such relief is hereby reversed.[11]

---

[6] See *Garland v. Carnes*, 259 Ga. 263 (379 SE2d 782) (1989) ("It is the duty of the trial court to construe a covenant to carry into effect the intention of the parties, which is to be discerned from the whole instrument.").

[7] The order, which purports to enjoin Peter Danos from using the boat dock "on the current lot 66," is unclear. Presumably, the trial court refers to Lot 6 in Thunder Point Subdivision. However, it is uncertain whether the trial court intended to enjoin the Danoses' use of both docks or merely the dock on the western portion of Lot 6. Although the Danoses indicate that the order refers only to the westernmost dock, the homeowners apparently sought an injunction against the use of both docks.

[8] *Harris v. Gilmore*, 265 Ga. App. 841, 843 (3) (595 SE2d 651) (2004).

[9] OCGA § 9-5-1.

[10] The homeowners do not argue that the use of the docks should be enjoined based upon the Danoses' failure to obtain approval for the docks' location.

[11] See *Atlanta Area Broadcasting v. James Brown Enterprises*, 263 Ga. App. 388, 393 (587 SE2d 853) (2003).

*Judgment affirmed in part and reversed in part. Adams and Bernes, JJ., concur.*

DECIDED FEBRUARY 21, 2005 —
RECONSIDERATION DENIED MARCH 9, 2005.

*Donald E. Dyches, Jr.*, for appellants.
*Stewart, Melvin & Frost, Frank Armstrong III*, for appellee.