A07A0653, A07A0654. ALEA LONDON LIMITED v. WOODCOCK et al.; and vice versa.
(649 SE2d 740)

MIKELL, Judge.

In this appeal and cross-appeal, we affirm a judgment entered in favor of Ray Woodcock, individually and d/b/a Mulligan's Bar and Grill ("the bar"), and Bruce L. Stanfield, in Alea London Limited's declaratory judgment action. The case hinges on the proper interpretation of the assault and battery exclusion in Alea's commercial general liability ("CGL") insurance policy. Although we disapprove of the trial court's decision to submit the question of contract construction to the jury, the jury properly determined that coverage existed for the incident in question, and the judgment entered on the verdict reflects that finding and correctly concludes that Alea has both a

duty to defend and the duty to indemnify Woodcock. The judgment therefore is affirmed.[1] The relevant facts follow.

Alea filed this action against Woodcock and Stanfield seeking a declaration that the CGL policy Alea issued to Woodcock did not cover injuries sustained by Stanfield when he was struck in the nose by a beer bottle thrown by a patron in the bar. The patron threw the bottle at a different person but missed, hitting Stanfield instead. Stanfield contended that Woodcock was liable because he and other employees failed to prevent the bottle thrower's attack. Stanfield claimed he suffered serious injury and disfigurement and would incur $65,000 in medical expenses for reconstructive surgery.

Alea claimed that it had no duty to defend or indemnify Woodcock because the incident fell within the policy's assault and battery exclusion, which states:

> Exclusion a. . . . Expected or intended injury. "Bodily Injury" or "Property Damage" expected or intended from the standpoint of any insured; or arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured.

Alea and Woodcock filed cross-motions for summary judgment. Alea argued that the exclusion barred coverage for the incident because Stanfield admitted that his injuries arose from an assault and battery that was unprovoked by him and perpetrated by a dangerous patron in the bar. Woodcock argued that the exclusion did not apply because the assault and battery was committed by a patron, and not "by any insured or an employee or agent of the insured."

The trial court denied both motions for summary judgment, ruling that the exclusion was ambiguous and that the ambiguity should be resolved by a jury.[2] All parties moved for reconsideration, urging the court to apply the rules of contract construction to decide the issue as a matter of law, given that no facts were in dispute. The trial court denied the motions for reconsideration.

A pretrial order was entered on June 1, 2006. During the pretrial conference, the court conditionally denied Alea's motion in limine, which sought to exclude reference to an insurance policy issued to

---

[1] See *Cornelius v. Lawrence*, 203 Ga. App. 113, 115 (2) (416 SE2d 115) (1992) ("[i]t is axiomatic in Georgia appellate law that an appellant, to secure a reversal, must show not only error but harm") (citation and punctuation omitted).

[2] The court noted in a prior discovery order that a contract is ambiguous if it is capable of multiple interpretations.

Woodcock the day after this incident. The assault and battery exclusion in the subsequent policy states, in pertinent part: "This insurance does not apply to any claim arising out of an assault and/or battery or out of any act or failure to act to prevent or suppress an assault and/or battery *whether caused by the insured, an employee, a patron, or any other person.*"[3] The court ruled that the subsequent policy exclusion would be admissible if Alea argued at trial that the language in the applicable policy was clear in its meaning. In addition, the trial court approved defendants' proposed verdict form, which asked the jury to determine "coverage" as opposed to only the duty to defend, as Alea had requested.

The case proceeded to trial on stipulated facts. Pertinent allegations in Stanfield's complaint were read to the jury. A copy of the trial court's order denying the parties' motions for reconsideration also was read to the jury, including the following quote from *Danos v. Thompson*:[4]

> The construction of a contract is a matter for the courts, and it involves a three-step process. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[5]

Woodcock moved for a directed verdict on the ground that once the court determined that the exclusion was ambiguous, the court should have construed the exclusion against Alea as the drafter of the policy.[6] The court denied the motion. The court extensively charged the jury on the rules applicable to construction of contracts in general and to interpretation of insurance policies in particular. During deliberations, the jury foreperson sent a note to the court, asking for a copy of the court's instructions. The court recharged the jury that when interpreting an ambiguous insurance contract, "such contracts must be construed favorably to the insured and against the insurer." After deliberating further, the jury foreperson sent another note,

---

[3] (Emphasis supplied.)
[4] 272 Ga. App. 69 (611 SE2d 678) (2005).
[5] (Footnote omitted.) Id. at 71 (1).
[6] See, e.g., *Guaranty Nat. Ins. Co. v. Brock,* 222 Ga. App. 294, 296 (2) (474 SE2d 46) (1996).

asking whether the jury's decision should be based on insurance law or on the intent of the parties. The court brought the jurors back in, and they stated that they could not come to an agreement on intent because there was no evidence submitted on that issue. The court again instructed the jury that an ambiguous insurance contract "must be construed favorably to the insured and against the insurer."

Finally, the jury reached a verdict, finding that the policy at issue provided coverage to Woodcock for the claims alleged by Stanfield. The court entered judgment on the verdict in favor of Woodcock and Stanfield on the issue of coverage, including both the duty to defend and the duty to indemnify. Alea filed a motion for new trial, which the court denied after a hearing. Alea appeals in Case No. A07A0653, alleging that the trial court erred in (1) denying its motion for summary judgment; (2) denying its motion for reconsideration; (3) submitting the issue of its duty to indemnify to the jury; (4) conditionally denying its motion in limine; (5) charging and recharging the jury that ambiguities in insurance contracts must be construed against the insurer; (6) entering judgment on the verdict; and (7) denying its motion for new trial. In Case No. A07A0654, Woodcock cross-appeals in the event we reverse in the main appeal. Because we rule in favor of Woodcock and Stanfield on the main appeal, Woodcock's cross-appeal is moot. The cases are thus consolidated for disposition in a single opinion.

1. Alea's challenge to the orders denying its motions for summary judgment and reconsideration are rendered moot by the subsequent entry of verdict and judgment because the legal issue raised in the motions — the applicability of the exclusion — was considered at trial. "After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case."[7] "[W]here a motion for summary judgment is overruled on an issue and the case proceeds to trial *and the evidence at the trial authorizes the verdict (judgment)* on that issue, any error in overruling the motion for summary judgment is harmless."[8] We will, however, consider the challenge to the judgment rendered on the verdict and the denial of Alea's motion for new trial.[9]

---

[7] (Citations and punctuation omitted.) *Lovell v. Rea*, 278 Ga. App. 740, 741-742 (1) (629 SE2d 459) (2006).

[8] (Citations and punctuation omitted; emphasis in original.) *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 836 (4) (446 SE2d 186) (1994).

[9] See OCGA § 5-6-36 (a): "The entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court." But see *Aldworth Co. v. England*, 281 Ga. 197, 200 (2) (637 SE2d 198) (2006) ("a party is not entitled to

2. On appeal, we examine the record in the light most favorable to the verdict and judgment.[10] "[A] jury verdict, after approval by the trial court, and the judgment thereon will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law."[11] The denial of a motion for a new trial is a matter within the sound discretion of the trial court and will not be disturbed if there is any evidence to authorize it.[12]

In the case at bar, the policy and Stanfield's allegations support a finding that coverage exists. We disagree, however, with the trial court's decision to submit the issue to the jury. "Construction and interpretation of a contract are matters of law for the court."[13] "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains."[14] "If the court finds that an ambiguity exists, it is the court's duty to resolve that ambiguity by applying the pertinent rules of contract construction."[15]

The rules of construction require the court to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other.[16] In addition, "[i]t is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless."[17] Finally,

[a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document, *any exclusion from coverage sought to be invoked by the insurer is* likewise *strictly construed,* and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.[18]

---

judgment as a matter of law on appellate review of the sufficiency of the evidence unless that party moved for a directed verdict on that basis") (citation omitted).

[10] *Horan v. Pirkle*, 197 Ga. App. 151, 153 (2) (397 SE2d 734) (1990).

[11] (Citation omitted.) Id.

[12] *Professional Consulting Svcs. of Ga. v. Ibrahim*, 206 Ga. App. 663, 665 (1) (426 SE2d 376) (1992).

[13] *Sewell v. Hull/Storey Dev.*, 241 Ga. App. 365, 366 (1) (526 SE2d 878) (1999), citing OCGA § 13-2-1.

[14] (Citation and punctuation omitted.) *Ga. Farm &c. Ins. Co. v. Burnett*, 167 Ga. App. 480, 483 (2) (306 SE2d 734) (1983).

[15] *Sewell*, supra, citing OCGA § 13-2-2.

[16] *Southern Trust Ins. Co. v. Dr. T's Nature Products Co.*, 261 Ga. App. 806, 807 (1) (584 SE2d 34) (2003). See also OCGA § 13-2-2 (4) ("the whole contract should be looked to in arriving at the construction of any part").

[17] *Bd. of Regents v. A. B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987).

[18] (Citation and punctuation omitted; emphasis in original.) *Guaranty Nat. Ins. Co.*, supra at 296-297 (2). Accord *North Metro Directories Publishing v. Cotton States Mut. Ins. Co.*, 279 Ga.

But "the cardinal rule of contract construction is to ascertain the parties' intent [and] [w]hen the policy terms are clear and unambiguous, we look to the contract alone to determine that intent."[19]

We apply the rules of construction to the insurance contract in the case at bar. The CGL portion of the policy excluded from coverage " '[b]odily [i]njury' . . . arising out of an assault and battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault and battery, *committed by any insured or an employee or agent of the insured.*"[20] In comparison, the liquor liability coverage part of the policy, which Alea does not contend applies here, excludes "any claim arising out of an assault and/or battery or out of any act or failure to act to prevent or suppress an assault and/or battery whether caused by the insured, an employee, *a patron* or any other person."[21] The CGL assault and battery exclusion does not contain the word "patron"; rather, it applies to acts "committed by any insured or an employee or agent of the insured." On the other hand, the liquor liability provision excludes coverage for an assault and battery committed by a patron. Harmonizing and giving effect to each provision, and construing the policy as a whole, we conclude that the CGL portion of the policy is not intended to exclude coverage for a bodily injury claim arising out of an assault and battery committed by a patron or out of any act or omission in connection with prevention or suppression thereof. Any other interpretation would render meaningless the phrase "committed by any insured or an employee or agent of the insured." Moreover, even if a question arose as to whether the aforementioned phrase was intended to modify both the phrase "arising out of an assault and battery, provoked or unprovoked" and the phrase "[arising] out of any act or omission in connection with prevention or suppression of an assault and battery,"[22] it was incumbent upon the court to construe any such ambiguity strictly against the insurer as the drafter of the contract.[23]

We are not persuaded by Alea's sweeping assertion that an assault and battery exclusion applies if the claimant's injury "arose from" an assault and battery, no matter whom the actor or theory of

---

App. 492, 494 (1) (631 SE2d 726) (2006) (ambiguity will be construed strictly against insurer as the drafter of the policy); *Southern Trust Ins. Co.*, supra ("exclusions will be strictly construed against the insurer and in favor of coverage") (citation omitted).

[19] (Footnotes omitted.) *North Metro Directories Publishing*, supra.

[20] (Emphasis supplied.)

[21] (Emphasis supplied.)

[22] See *North Metro Directories Publishing*, supra ("a word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one") (punctuation and footnote omitted).

[23] See id.; *Southern Trust Ins. Co.*, supra; *Guaranty Nat. Ins. Co.*, supra.

liability. The cases upon which Alea relies do not support its position because the policy in each cited case excluded coverage for any claim for bodily injury arising out of an assault and battery, regardless of who committed the assault and battery.[24] Because the evidence, i.e., the policy and the allegations of Stanfield's complaint, supports the judgment that coverage exists, the trial court did not err in denying Alea's motion for new trial.

3. Alea complains that the trial court erred in submitting to the jury the issue of Alea's duty to indemnify Woodcock for the claims asserted by Stanfield. Alea argues that the issue of its duty to indemnify was not ripe for adjudication because the factual basis for liability had not been decided at that juncture. We note that, according to Alea's brief, Alea assumed defense of the Stanfield claim under a reservation of rights and that Stanfield's personal injury action against Woodcock was specially set for trial on January 22, 2007.

Alea asserts that the insurer's duty to indemnify is not triggered until the insured is actually held liable to the injured party and there is a finding that the damages awarded to the underlying plaintiff are actually covered by the insurance policy. There is foreign authority holding that "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."[25] Woodcock argues that *Maryland Cas. Co. v. Pacific Coal & Oil Co.*[26] governs the disposition of this issue. In that case, the United States Supreme Court found that there was an actual controversy regarding the duties of the insurer both to indemnify and defend in the underlying state litigation; however, the Court did not discuss the duties separately, so the decision does not assist us in our analysis.[27]

Although our research has not revealed a Georgia case precisely on point, in *Colonial Oil Indus. v. Underwriters Subscribing &c.*,[28] our Supreme Court noted that the duty to defend and the duty to pay are independent contractual obligations, so that an insurer who has

---

[24] See *Jefferson Ins. Co. &c. v. Dunn*, 269 Ga. 213, 214, n. 1 (496 SE2d 696) (1998); *Capitol Indem. v. Brown*, 260 Ga. App. 863, 864 (1) (581 SE2d 339) (2003); *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 712 (502 SE2d 514) (1998); *Dynamic Cleaning Svc. v. First Financial Ins. Co.*, 208 Ga. App. 37, 38 (430 SE2d 33) (1993) (physical precedent only). Accord *First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543 (644 SE2d 453) (2007) (excluding coverage for claims "caused by or arising directly or indirectly out of or from an assault or assault and battery of any nature whatsoever, whether or not committed by or at the direction of the Insured, his employees, patrons, or any causes whatsoever").

[25] (Citation omitted.) *Nationwide Ins. v. Zavalis*, 52 F3d 689, 693 (II) (7th Cir. 1995). See also *Bankwest v. Fidelity & Deposit Co. of Md.*, 63 F3d 974, 981-982 (II) (10th Cir. 1995); *United Svcs. Automobile Assn. v. Dare*, 357 Ill. App.3d 955, 960-961 (830 NE2d 670) (2005).

[26] 312 U. S. 270 (61 SC 510, 85 LE 826) (1941).

[27] Id. at 272-273.

[28] 268 Ga. 561 (491 SE2d 337) (1997).

wrongfully refused to defend may raise policy defenses to coverage.[29] The Court explained that the breach of the duty to defend should not enlarge indemnity coverage beyond what is owed under the parties' contract.[30] And the Eleventh Circuit Court of Appeals has held that the "duty to defend is separate and apart from the duty to indemnify[;] [thus] the insurer may be required to defend a suit even if the later true facts show there is no coverage."[31] In discussing the insurer's duty to investigate the "true facts" in determining whether to defend a claim, the Court in *Colonial Oil* decided that placing such a burden on insurers was not unreasonable, "especially in light of the availability of the 'procedurally safe course' of providing a defense under a reservation of rights and filing a declaratory judgment action to determine its obligations."[32]

However, the propriety of deciding both a duty to defend and to indemnify in the same declaratory judgment action is well established. We explained in *Pennsylvania Threshermen &c. Ins. Co. v. Wilkins*[33] that

> [w]hile the earlier cases . . . generally tended to hold that a liability insurer was not entitled to a declaratory judgment as to liability under its policy until after plaintiff had recovered a judgment against the insured and asserted a claim against the insurer, the trend of decisions recently has been away from this position and towards allowing the insurer a declaration of rights as to its liability under the policy or duty to defend either pending or threatened actions against its alleged insured.[34]

In the instant case, Alea quite properly took the "procedurally safe course," providing a defense under a reservation of rights and filing a declaratory judgment action against both its insured and the party claiming against the insured.[35] In its complaint Alea sought a declaration that it had no duty to defend or to indemnify Woodcock for damages arising out of the incident. Alea argued in its motion for summary judgment that it had no duty to defend or indemnify

---

[29] Id. at 563 (4).

[30] Id.

[31] *Trizec Properties v. Biltmore Constr. Co.*, 767 F2d 810, 812 (11th Cir. 1985).

[32] (Footnote omitted.) *Colonial Oil Indus.*, supra at 562 (2).

[33] 106 Ga. App. 570 (127 SE2d 693) (1962).

[34] Id. at 572-573.

[35] Compare *Vara v. Essex Ins. Co.*, 269 Ga. App. 417, 419 (a) (604 SE2d 260) (2004) (where insurer denied coverage and refused to defend under reservation of rights, insurer had "fixed its rights" and waived right to deny duty to defend).

580

Woodcock. Apparently, Alea changed its position at the pretrial conference,[36] as reflected by the trial court's notations on the parties' proposed verdict forms. The court wrote on the defendants' proposed form: "Per the Court's Order on the coverage issue of indemnity and the duty to defend, this is the verdict form for trial."[37]

Thus, it was not until after discovery was completed, and shortly before trial, that Alea objected to the jury's determination of the indemnity issue. At that juncture, the "true facts" related to the assault and battery exclusion had been discovered, and all defenses to coverage had been presented. Pretrial settlement efforts were discussed on the record. Under these circumstances, we conclude that the trial court properly entered judgment that Alea has both a duty to defend and duty to indemnify Woodcock for the claims asserted by Stanfield.[38]

4. In light of our ruling in Division 2, we need not address Alea's remaining enumerations of error.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

---

DECIDED JUNE 5, 2007 —
RECONSIDERATION DENIED JULY 13, 2007 — ▆▆▆▆▆▆▆

*Budd, Larner, Rosenbaum, Greenberg & Sade, Gilbert M. Malm,* for appellant.

*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, John E. Bumgartner, Laura E. Roberts,* for appellees.

---

[36] The pretrial conference was not recorded.

[37] Alea also objected to the form of the verdict at trial, thereby preserving the issue for appellate review. Compare *Dehler v. Setliff*, 153 Ga. App. 796, 799 (2) (266 SE2d 516) (1980) (plaintiff failed to obtain ruling on motion to amend pretrial order and its pleadings).

[38] See, e.g., *Stevens Indus. v. Maryland Cas. Co.*, 391 F2d 411, 417 (5th Cir. 1968) (where many of multiple claims had settled, entry of declaratory judgment as to duty to indemnify held proper).