CERTAIN INTERESTED UNDERWRITERS AT LLOYDS, LONDON *vs.*
RAYMOND C. LEMONS & others.[1]

No. 12-P-1543.

Plymouth. November 8, 2013. - June 4, 2014.

Present: COHEN, KATZMANN, & HANLON, JJ.

*Insurance,* General liability insurance, Illegal acts exclusion, Insurer's obliga-
tion to defend, Construction of policy. *Assault and Battery.*

In a civil action seeking a judgment declaring that the plaintiff insurer had no
duty to defend or indemnify a tavern under a commercial general liability
policy that the insurer had issued, for injuries suffered by one of the
tavern's patrons during an attack by several unidentified people, the judge
properly granted summary judgment in favor of the insurer, where an
exclusion in the policy for bodily injury arising out of an assault and bat-
tery was unambiguous, in that the language in the exclusion, "committed
by any Insured or an employee or agent of the insured," related only to the
words "act or omission" preceding it, and therefore pertained to acts or
omissions of the insured, i.e., negligent security claims. [402-407]

CIVIL ACTION commenced in the Superior Court Department on
June 8, 2006.

The case was heard by *Robert C. Rufo,* J., on motions for
summary judgment.

*Julie E. Green (Paul J. Adams* with her) for Raymond C.
LeMons & another.

*Matthew Mahoney* for the plaintiff.

KATZMANN, J. This insurance coverage dispute arises out of an
altercation that occurred in a tavern. The issue is whether, in
this declaratory judgment action, a Superior Court judge
properly granted summary judgment in favor of the insurer
upon concluding that the assault and battery exclusion in the
policy relieved the insurer from any duty to defend or indemnify
the tavern. We affirm.

[1]Kathleen E. LeMons, individually and as litigation trustee, and Luigi's V,
Inc., doing business as Gigi's Pub.

*Background.* On or about February 22, 2001, several unidenti-fied people attacked and injured Raymond C. LeMons (Ray-mond), a defendant in this declaratory judgment action, while he was a patron of Luigi's V, Inc., doing business as Gigi's Pub (Gigi's).[2] Gigi's was insured through a commercial general li-ability policy issued by Certain Interested Underwriters at Lloyds, London (Lloyds). The policy featured an assault and battery exclusion, which excluded coverage in the following situation:

> "a. Bodily injury or property damage:
>
> "(1) Expected or intended from the standpoint of any insured; or
>
> "(2) Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any Insured or an employee or agent of the insured."[3]

Raymond C. LeMons and his wife, Kathleen E. LeMons (Kath-leen) (collectively, LeMonses), brought suit against Gigi's on February 23, 2004, to recover for bodily injuries and loss of consortium on a theory of negligent security by Gigi's. Lloyds initially assumed the defense of Gigi's under a reservation of rights, but during the course of the litigation, Lloyds disclaimed its duty to defend or indemnify Gigi's, citing the assault and battery exclusion in the policy. On August 14, 2006, a Superior Court judge approved a settlement between the LeMonses and Gigi's, in which Gigi's agreed to judgment in the amount of $1.2 million on the underlying claim, the LeMonses covenanted not to execute the judgment against Gigi's, and Gigi's assigned all of its rights against Lloyds to Kathleen as litigation trustee.

Meanwhile, on June 8, 2006, Lloyds filed this action seeking a judgment declaring that it had no duty to defend or indemnify Gigi's with respect to the attack on Raymond. The parties filed cross motions for summary judgment. Following a hearing, the

---

[2]No party claims that the assailants had an affiliation with Gigi's.

[3]The policy also included an identical assault and battery exclusion with respect to personal injury claims.

judge granted summary judgment to Lloyds, reasoning that the assault and battery exclusion relieved Lloyds from a duty to defend or indemnify the tavern. On November 10, 2009, the judge denied the LeMonses' motion for reconsideration, and the LeMonses appealed.

*Discussion.* "Interpretation of an insurance policy is a question of law to be determined by the court." *Golchin* v. *Liberty Mut. Ins. Co.*, 466 Mass. 156, 159 (2013). "The interpretation of an insurance contract is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense." *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997).

"If free from ambiguity, an exclusionary clause, like all other provisions of an insurance contract, must be given its usual and ordinary meaning." *Id.* at 281. Where "there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.' " *Ibid.*, quoting from *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993). "A term is ambiguous only if it is susceptible of more than one meaning and if reasonably intelligent persons would differ over the proper meaning." *McLaughlin* v. *Berkshire Life Ins. Co. of America*, 82 Mass. App. Ct. 351, 355 (2012), quoting from *Suffolk Constr. Co.* v. *Illinois Union Ins. Co.*, 80 Mass. App. Ct. 90, 94 (2011). But "an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Surabian Realty Co.* v. *NGM Ins. Co.*, 462 Mass. 715, 718 (2012) (quotation and citation omitted).

Although we have previously interpreted more than one assault or battery exclusion in an insurance policy, see, e.g., *United Natl. Ins. Co.* v. *Parish*, 48 Mass. App. Ct. 67, 68 (1999) (*Parish*), the interpretation of the particular phrasing of the insurance exclusion at issue here is a matter of first impression in Massachusetts. In particular, the parties dispute the effect of the final phrase of the exclusion: "committed by any Insured or an employee or agent of the insured."[4] They disagree about which

---

[4]For the sake of simplicity, we use "insured" herein to refer to the insured itself as well as agents and employees of the insured. There is no need to distinguish between an insured and its agents or employees in this case.

of the antecedent phrases this wording restricts. The answer to that question determines whether the insurance coverage encompasses the claims pertaining to the injuries to Raymond.

Lloyds argues that the "committed by" language attaches only to the words "act or omission" that precede it. Lloyds reads the clause as excluding claims "arising out of an assault or battery, provoked or unprovoked" — no matter who committed that assault or battery — and as excluding an "act or omission" that was "committed by any Insured or an employee or agent of the insured." Lloyds understands the "act or omission" language as excluding negligent security claims, which necessarily pertain to acts or omissions of the insured.

The LeMonses read the exclusion differently. They understand the "committed by" language as "refer[ring] to, 'an assault or battery,' which appears twice in the exclusion," and argue "that the Assault and Battery Exclusion must apply only when an assault or battery is committed by an employee or agent of Gigi's." According to this reading, claims arising from assaults or batteries by anyone other than an insured would be covered by the policy.

We read the disputed exclusion clause to have two distinct parts. The first excludes coverage for injuries "[a]rising out of an assault or battery, provoked or unprovoked." The second excludes coverage for injuries arising "out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any Insured or an employee or agent of the insured." "Every word . . . must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." *Deutsche Bank Natl. Assn.* v. *First Am. Title Ins. Co.*, 465 Mass. 741, 748 (2013), quoting from *Metropolitan Prop. & Cas. Ins. Co.* v. *Morrison*, 460 Mass. 352, 362 (2011). The use of the words "arising out of" before "assault and battery" and, again, before "any act or omission" indicates that the two phrases are distinct and that words restricting the meaning of the former do not operate on the latter. See *Kelly* v. *Figueiredo*, 223 Conn. 31, 36 (1992).

We understand the phrase "committed by any Insured or an employee or agent of the insured" as the Indiana Court of Appeals did in *Smock* v. *American Equity Ins. Co.*, 748 N.E.2d

432 (Ind. App. 2001), to restrict the words "act or omission" in the phrase immediately preceding it. See *id.* at 436 ("The assault and battery exclusion expressly precludes coverage for bodily injury arising out of an employee's acts or omissions 'in connection with prevention or suppression' of a battery. . . . By implication that includes batteries by third parties"). We read the comma before the words "committed by" as attaching the "committed by" language only to the words "act or omission." Without the comma in that location, it might have appeared that the "committed by" wording applied to the words immediately before it, assault or battery. The comma confirms that the plain meaning of the part of the exclusion beginning with "act or omission" is to exclude negligent security claims from coverage.

Our reading of the exclusion in this case is informed by our holding in *Parish*, 48 Mass. App. Ct. at 70-72. In *Parish*, we considered the scope of an assault and battery exclusion that excluded "[c]laims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the Insured, and/or his employees." *Id.* at 68. In particular, we considered whether the language of "arising out of" was broad enough to encompass claims of negligent security in addition to any claim arising out of direct actions by the insured or its agents. Noting that cases have "construe[d] 'arising out of' expansively," we concluded that the language was broad enough to exclude the claims because without the underlying assault and battery, "there would have been no personal injuries and, therefore, no basis for a suit against the insured for negligence." *Id.* at 70.

After *Parish*, it became clear that the "act or omission" language would not be necessary to exclude negligent security claims from coverage in Massachusetts. But the language used in the policy that we are considering here was taken from a form endorsement from 1997, two years before *Parish*. The timing is consistent with the conclusion that the language was intended to exclude negligent security claims even though the additional language may not have been necessary, at least under Massachusetts law, by the time the policy became effective in 2001. Moreover, given that the language of the exclusion

originated in a standard insurance form, using the additional language ensured that negligent security claims would be excluded from coverage across jurisdictions regardless of the jurisdiction's interpretation of "arising out of an assault or battery."[5] In light of our determination that negligent security claims were excluded by the language interpreted in *Parish*, the use of additional language specifically addressing negligent security claims confirms that such claims are excluded in this case as well.[6]

The LeMonses argue that it would be improper to construe the exclusion language to effectively refer to "an act or omission committed by" a person because it is not reasonable to speak of someone committing an omission. They ignore, however, that clearly our Legislature believed otherwise when it considered the regulation of insurance. See G. L. c. 175, § 223A(*b*)(1), inserted by St. 2012, c. 434, § 1 (" 'Fraudulent life settlement act' shall mean . . . an act or omission committed by a person . . ."). The Supreme Judicial Court also considers this phrasing fit for use. See *Hill* v. *Metropolitan Dist. Commn.*, 439 Mass. 266, 269 n.8 (2003) (inserting word "committed" immediately after words "act or omission" in explaining meaning of section of General Laws). Nor are the judges and lawmakers of this Commonwealth unique. See *Carroll* v. *United States*, 661 F.3d 87, 92 (1st Cir. 2011) ("government may not be held responsible for negligent acts or omissions committed by employees of government contractors whose daily operations are not closely supervised"). Even assuming there is some awkwardness in the concept of "committing an omission," the phrase "act or omission" has become so common in legal

---

[5]Jurisdictions differ in the interpretation of the scope of an exclusion of claims "arising out of an assault or battery" from insurance coverage. See Windt, Insurance Claims & Disputes § 11.23, at 11-428 to 11-429 (6th ed. 2013). But with respect to policies that include the "act or omission" language, "[c]ourts have had no difficulty in holding that such exclusions eliminate coverage for claims of negligence in failing to stop or prevent the assault, or negligent hiring and supervision." *Id.* at 11-430.

[6]The LeMonses argue that our reading makes the "committed by" language redundant because, even without it, only an act or omission of the insured or its agents could be the basis for a negligent security claim. We disagree. It confirms that the clause excludes from the insurance policy negligent security claims — the exact type of claim brought here.

discourse such that verbs like "commit" can be used readily to refer to it.

The LeMonses' reliance on *ALEA London Ltd.* v. *Woodcock*, 286 Ga. App. 572 (2007), is unavailing. First, *Woodcock* relies on a comparison between the assault and battery exclusion at issue there, with respect to bodily injury, and another assault and battery exclusion in the same policy, with respect to liquor liability coverage.[7] *Id.* at 577. Here, we do not have similar contrasting language. Second, the Georgia court also relies on its narrow interpretation of the phrase "arising out of an assault or battery." See *id.* at 577-578 ("We are not persuaded by ALEA's sweeping assertion that an assault and battery exclusion applies if the claimant's injury 'arose from' an assault and battery, no matter whom the actor or theory of liability"). However, as has been noted, we have previously rejected such a narrow interpretation. See *Parish*, 48 Mass. App. Ct. at 70-72.

Finally, we note that the LeMonses' reading of the exclusion defies common sense. They argue that the insurance policy covers claims that arise out of assaults or batteries by customers or other third parties, but excludes claims arising out of assaults or batteries committed by an employee or agent. It is hard to imagine that Lloyds would have drawn this line in drafting the contract. Far more sensible is Lloyds's understanding — that the policy excludes coverage regardless who committed the assault or battery.

*Conclusion.* We conclude that there is no ambiguity in the assault and battery exclusion in the insurance policy provided by Lloyds. The plain language of the exclusion, bolstered by the context of the insurance policy as a whole and by our prior case law, unambiguously excludes coverage in a situation such as this, where the underlying claims stemmed from an assault and battery, regardless who committed that assault and battery.

---

[7]The assault and battery exclusion used the same language, "committed by any insured or employee or agent of the insured," that was used in the exclusion in this case. See *Woodcock, supra* at 577. By contrast, the liquor liability provision explicitly excluded coverage for failure "to prevent or suppress an assault and/or battery whether caused by the insured, an employee, a patron or any other person." *Ibid.*

We affirm the judgment declaring that the insurer had no duty to defend or indemnify the insured.

*So ordered.*