**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 28, 2020**

# In the Court of Appeals of Georgia

A20A0895. HOLMAN et al. v. GLEN ABBEY HOMEOWNERS ASSOCIATION, INC. et al.

COLVIN, Judge.

In June 2015, the City of Alpharetta notified appellee Glen Abbey Homeowners Association, Inc. that the Association would be required to make more than $1.9 million in repairs to a lake located in the Glen Abbey subdivision. A majority of the owners of lots adjoining the lake amended the declaration of covenants specific to them so as to shift responsibility for the repairs to all 535 members of the Association. When the Association denied that this amendment was effective and assessed repair costs against the lake lot owners, a majority of them voted to terminate the relevant declaration and brought this action for declaratory and injunctive relief against the Association. The trial court later granted the Association

judgment on the pleadings on some of plaintiffs' claims and on the Association's counterclaims, and we granted plaintiffs' application for interlocutory review. On appeal, plaintiffs assert that the trial court erred in its interpretation of the declarations at issue, in its holding that an Alpharetta ordinance did not bind the Association, and in its grant of injunctive relief to the Association. We affirm the trial court's construction of the declarations, but we vacate its remedy and remand for further proceedings.

"On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to the appellant[s], drawing all reasonable inferences in [their] favor." (Citations and punctuation omitted). *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 893 (1) (792 SE2d 680) (2016).

Thus viewed in their favor, the record shows that plaintiffs, the owners of 12 of the 16 lake lots, filed their complaint on January 30, 2019. The complaint alleged that within the Glen Abbey subdivision is "a 4.5 acre lake that serves as the storm water detention pond for the entire subdivision" and is "owned collectively" by the 16 lake lot owners and the Association, "which owns a large recreation area with a lot[-]sized frontage along the lake." The Glen Abbey subdivision is governed by a

2

declaration of covenants and restrictions ("the Glen Abbey Declaration"), which provides in relevant part:

> Only *the Owners of Lots which lie partially within the Lake* will have any rights with respect to the Lake covering their Lots and the Members shall have the right to use that portion of the Lake contiguous to part of the Common Area. *The Association shall have no liability or duty whatsoever with respect to the Lake, except to the extent that a portion of th[e] Lake exists on a portion of the Common Area and then only to the extent provided by a separate declaration addressing the lake. . . .* If the [developer,] *the Association and such Owners do not maintain the Lake* in accordance with the terms of such recorded document, *the Association shall have the right, but not the obligation, to provide any [maintenance] or repair required of the Lake* in accordance with such recorded document, and *the additional costs and expenses so incurred by the Association, beyond its pro rata contribution required under such recorded document, shall become part of the assessments for which such Owners are personally liable* hereunder. . . .

(Emphasis supplied.)

A second declaration of covenants, restrictions, and easements ("the Lake Declaration") laid out the respective responsibilities of the lake lot owners and the Association and was recorded on March 22, 1999. The Lake Declaration provides in relevant part:

*Maintenance by Lake Lot Owners and Association.* . . . [T]he Owners of the Lake Lots and the Association shall . . . be responsible for and shall perform all maintenance and repair of the Lake or the Dam which may reasonably be necessary and for the costs of all such maintenance and repair. *Each Owner of a Lake Lot and the Association, as the Owner of the Recreation Area, shall be responsible for an equal share of all costs incurred in connection with the maintenance and repair of the Lake . . . .*

*Payment of Expenses.* . . . Within thirty (30) days of [an annual meeting concerning the maintenance and repair of the lake and the dam during the coming year], *each Owner of a Lake Lot and the Association* shall receive an invoice from the Association for *his share of the cost of such maintenance* or repair (hereinafter the "Lake Assessment"). . .

*General Type of Maintenance and/or Repair.* The maintenance and/or repair required hereunder shall include, but not be limited to . . . any maintenance imposed upon the Owner[s] of the Lake Property by any governmental body or agency.

The Lake Declaration also provided for its own duration and amendment:

*Duration.* The provisions of this Declaration shall run with and shall bind the Lake Property and shall remain in effect for a period of twenty (20) years after the date this Declaration is recorded, after which time this Declaration shall be automatically extended for successive periods of twenty (20) years, *unless such extension is disapproved in writing by*

4

*greater than a majority of the Owners of the Lake Lots and the Association. . . .*

*Amendment.* . . . This Declaration may be amended upon the affirmative vote or written consent, or any combination thereof, of *a majority of the Owners of Lake Lots and the Association* . . . . A meeting may be called (but shall not be required to be call[ed]) to consider and vote upon any such amendment.

(Emphasis supplied.) The Glen Abbey subdivision was annexed by the City of Alpharetta in 2005.

According to a July 2016 summary sent to the Association, the projected cost of repairs to the lake and the dam was $1,979,554. In 2018, the Association sought to assess this amount from the lake lot owners, 13 of whom executed an Amendment to the Lake Declaration, recorded on May 22, 2018. The Amendment provided in relevant part that the Association was responsible for the maintenance and repair of the lake and dam and "shall have the right . . . to assess the Association's *full membership* for the costs of all such maintenance and repair[.]" (Emphasis supplied.) On July 27, 2018, the Association recorded a notice of its opinion that the lake lot owners' Amendment was invalid. On March 8, 2019, 12 lake lot owners also recorded

a written Disapproval of the Lake Declaration so as to invalidate the Lake Declaration within 20 years after its adoption, or on March 22, 2019.

As later amended, the complaint sought extensive declaratory relief, including as to the meaning of the Lake Declaration, the validity of the Amendment and the Disapproval, and the invalidity of the Assessment (Counts 1-3), and that a City of Alpharetta ordinance making homeowners' associations responsible for maintaining storm water management facilities "take[] primacy over any portion of the unamended Lake [Declaration]" (Count 4). The complaint also sought to restrain the Association from collecting the Assessment (Counts 5-7), to quiet title concerning the Association's notice of the Amendment's invalidity (Count 9), and to recover costs and attorney fees under OCGA § 13-6-11 (Count 8).[1] The Association answered and counterclaimed for a declaration cancelling the lake lot owners' amendment and disapproval of the Lake Declaration (Count 1); to quiet title by "permitting the Association to file any order in the land records . . . to effect canecllation of the purported amendments" to the Declaration (Count 2). The counterclaims also sought a permanent injunction, a money judgment for the unpaid Assessement, and costs and

_____

[1] With their original complaint, plaintiffs also filed a motion for a temporary restraining order and a preliminary injunction staying the Association from collecting any assessments concerning the lake.

6

attorney fees under OCGA § 13-6-11 (Counts 3-5). The Association also moved to dismiss some of plaintiffs' claims on the ground that they were seeking declarations as to events that had already occurred and for judgment on the pleadings.

After oral argument,[2] the trial court granted the Association's motion, finding that the Amendment was invalid because it improperly shifted the burden of the lake repair from the lake lot owners to the Association and because it did not gain the approval of the Association; that when read with the original Glen Abbey Declaration, the Lake Declaration expressed the intent that the 16 lake lot owners and the Association share the expenses of maintenance and repair in "17 equal shares"; and that the Alpharetta ordinance had no bearing on the dispute between the parties. The trial court therefore invalidated the lake lot owners' Amendment and Disapproval and held the Lake Declaration "valid and remain[ing] in full force and effect[.]" In a separate order, the trial court also dismissed the three counts of the complaint seeking declaratory relief as to the Amendment, the Disapproval, and the Assessment on the ground that it had no jurisdiction to issue an advisory opinion on these matters arising in the past.

---

[2] The transcript of an earlier hearing on a temporary restraining order has not been included in the appellate record.

7

On appeal, plaintiffs assert that the trial court erred in its construction of the Declarations (including the validity of the Amendment and the Disapproval as well as the import of the Alpharetta ordinance), in dismissing plaintiffs' claims for declaratory relief, and in granting the Association injunctive relief without conducting an evidentiary hearing.

1. The crux of this appeal is plaintiffs' assertions that the trial court erred in (a) its construction of the Declarations, (b) declaring the Amendment invalid, and (c) declaring the Disapproval invalid. We disagree.

The Supreme Court of Georgia has held that although restrictive covenants must be strictly construed in favor of the landowner, they must also be construed "so as to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." (Citations and punctuation omitted.) *Elite Realty Svcs., Inc. v. City of Auburn*, 272 Ga. 195, 196 (528 SE2d 236) (2000). See also *Garland v. Carnes*, 259 Ga. 263, 263 (379 SE2d 782) (1989).

(a) *The Declarations*. As the Glen Abbey Declaration emphasizes, "[o]nly" the lake lot owners, and no other Glen Abbey landowners, "will have any rights with respect to" the lake, with the Association having the "right, but not the obligation,"

8

to assess maintenance and repair costs as "part of the assessments for which such [o]wners" – that is, the lake lot owners – "are personally liable[.]" The Lake Declaration is entirely consistent with the Glen Abbey Declaration when it provides that the lake lot owners and the Association "shall . . . be responsible for and shall perform all maintenance and repair" of the lake; that "[e]ach Owner of a Lake Lot and the Association, as the Owner of the Recreation Area, shall be responsible for an equal share of all costs incurred in connection with the maintenance and repair of the Lake"; and that "[e]ach Owner of a Lake Lot and the Association" shall be invoiced "for his share of the cost of such maintenance or repair[.]" Given the plain meaning of these provisions, the trial court did not err when it concluded that the lake lot owners and the Association are each responsible for 1/17 share of the cost of the repairs.

(b) *Validity of the Amendment*. This Court has previously held that amendments that remove restrictions "from less than all the lots" in a subdivision "are not valid without the consent of the adversely affected property owners." *Licker v. Harkleroad*, 252 Ga. App. 872, 876 (2) (c) (558 SE2d 31) (2001). "Amendments that do not apply uniformly to similar lots or units are not effective without the approval of members whose interests would be adversely affected unless the declaration fairly apprises

9

purchasers that such amendments may be made." (Punctuation and emphasis omitted.) Id., citing Restatement (Third) of Property (Servitudes) § 6.10 (2) (2000); see also § 6.10 (2) (June 2020 update). "[C]ourts commonly protect the reliance interests of community members and disfavor nonuniform amendments which shift the benefits and burdens of community restrictions without the consent of those affected." Id., citing Restatement (Third) of Property, § 6.10 (2), comment f. As we noted in *Licker*, the relevant comment sets out "two exceptions to the rule disfavoring nonuniform amendments: (1) a change in conditions rendering the restrictions unreasonable, or (2) the declaration expressly puts purchasers on notice that such amendments may be made." (Citation omitted.) 252 Ga. App. at 876 (2).

Here, the Amendment adopted by the lake lot owners purports to shift liability for the maintenance and repair of the lake to all the Glen Abbey homeowners, even though (as the Glen Abbey Declaration provides) these homeowners have no independent right of access to the lake and (as the Lake Declaration provides) only the lake lot owners and the Association are responsible by "equal share of all costs incurred in connection with the maintenance and repair" of the lake. Further, the Amendment attempts to shift this liability to all the homeowners without their consent, and there is no indication that either of the two exceptions identified in the

10

Restatement – a change of conditions rendering the restrictions unreasonable, or express notice to purchasers that nonuniform amendments were authorized – apply here. As we suggested in *Licker*, it would be patently unfair to require a purchaser of a non-lake lot to read the Lake Declaration as notice that the purchaser might face liability for assessments to the Lake in the future. See 252 Ga. App. at 876, 877 (2) (c) (the declaration at issue "did not fairly put the purchasers on notice that individual lots could be removed from the effect of the restrictive covenants"; "construing the scope of amendments to include nonuniform application would only frustrate the express purpose of [the] community"). We also note that at the hearing on the Association's motion, plaintiffs conceded that each of them did have record or actual notice of their responsibilities and rights, including maintainance of the lake, as laid out in the Lake Declaration.

In short, we see no justification for departing in this case from the general rule disfavoring nonuniform amendments such as the one attempted by the lake lot owners here. The trial court did not err when it concluded that the Amendment was an invalid, nonuniform restriction on the Association and its members. See *Licker*, 252 Ga. App. at 876-877 (2) (c) (reversing trial court's determination that an amendment

11

removing a restriction against commercial use was valid when the amendment was adopted without the consent of the adversely affected lot owners).

(c) *Validity of the Disapproval.* Our affirmance of the trial court's substantive invalidation of the Amendment moots the question whether the Lake Declaration's *amendment* provisions require the approval of a majority of a single 17-member set *including* the lake lot owners and the Association, or (as the trial court held) the approval of a majority of the 16 lake lot owners *as well as* the "separate" approval of the Association. We remain obliged, however, to consider the closely related question of whether the lake lot owners had the authority to *disapprove* the Lake Declaration without the consent of the Association.

On the subject of disapproval, the operative language of the Lake Declaration is the same as that governing the amendment process: just as the Lake Declaration authorizes amendment upon the vote or consent of "a majority of the Owners of Lake Lots and the Association," the Declaration is terminated after a 20-year term if an "extension is disapproved in writing by greater than a majority of the Owners of the Lake Lots and the Association." By contrast, and as the trial court pointed out, the Lake Declaration defines the term "Lake Property" as "all of the Lake Lots and the Recreation Area," and treats this set of 17 owners, including the Association, in a

12

category it calls "Owner[s] of the Lake Property," without differentiating between them. Likewise, the Lake Declaration's maintenance provision states that "[e]ach Owner of the Lake Property [i.e., including the Association] agrees to pay the Association" its respective proportionate share of lake expenses "when due[.]"

Given that the Lake Declaration uses two different terms to identify the groups at issue, the only reasonable construction of the Declaration is that when its duration and amendment provisions require a majority of the lake lot owners "and the Association," they require *both* a majority of the lake lot owners *and* the *separate* approval of the Association. See *Tyson v. McPhail Properties*, 223 Ga. App. 683, 689 (6) (478 SE2d 467) (1996) (a contract "would not have used two different terms in two sequential paragraphs to describe the same thing"). This construction also preserves the Association's standing as the representative of the vast majority of the subdivision's owners, all of whom are entitled to use the common recreation area, but none of whom were responsible, except via each member's pro rata share in the costs of the Association, for repairs to the lake.

For these reasons, the trial court did not err when it found that the lake lot owners' purported Disapproval of the Lake Declaration was invalid without the approval of the Association.

2. Although plaintiffs assert that the trial court erred in concluding that an Alpharetta ordinance did not bind the Association, their complaint did not quote the ordinance, and they have failed to show us a certified copy of that ordinance in the record. "City and county ordinances must be alleged and proven in order to be considered by the superior and appellate courts of this State. The proper method of proving a city ordinance is production of the original ordinance or a certified copy thereof." (Citations omitted.) *Whitfield v. City of Atlanta*, 296 Ga. 641, 641 (769 SE2d 76) (2015). We therefore decline to address this assertion of error. Id.; *Strykr v. Long County Bd. of Commrs.*, 277 Ga. 624, 626 (6) (593 SE2d 348) (2004) (declining to address an assertion of error concerning an ordinance missing from the appellate record).

3. Plaintiffs also assert that the trial court erred in (a) dismissing their claims for declaratory relief and (b) granting the Association injunctive relief without an evidentiary hearing.

(a) The trial court dismissed Counts 1 through 3 of plaintiffs' complaint, which sought declarations that the Amendment was effectively adopted without the Association's consent, that the termination of the Lake Declaration was proper, and that the 2018 Assessments were invalid. To the extent that plaintiffs' assertion of

14

error is not mooted by our decision in Division 1, we agree with the trial court that plaintiffs improperly sought the trial court's validation or disapproval of past events. There was no error in dismissing these counts. See *Crittenton v. Southland Owners Ass'n, Inc.*, 312 Ga. App. 521, 522-523 (1) (718 SE2d 839) (2011) (affirming the dismissal of a complaint for declaratory relief concerning an election of directors of a property owners association as moot when the election had already occurred).

(b) As the Association concedes, however, the trial court erred when it granted the Association judgment on its counterclaim to quiet title without making any specific declaration thereto. See *Nelson v. Ga. Sheriffs Youth Homes, Inc.*, 286 Ga. 192, 193 (686 SE2d 663) (2009) (the Quiet Title Act, OCGA § 23-3-60 et seq., requires that a trial court make written findings of fact when ruling on such a claim). It is also the case that a trial court "abuses [its] discretion when [it] grants an injunction adverse to a party without any evidence to support such judgment[.]" (Punctuation and footnote omitted.) *Danos v. Thompson*, 272 Ga. App. 69, 72 (2) (611 SE2d 678) (2005) (reversing a judgment that covenants concerning docks had an adverse impact without the benefit of evidence on that subject).

Apart from the exhibits attached to the pleadings, as to which the trial court made findings of fact, no evidence concerning the actual effects of permanent

15

declaratory or injunctive relief was introduced at the hearing on the Association's motion, and the Association's claim for attorney fees remains pending below. In an abundance of caution, then, we vacate the trial court's direction to record its order or a reasonable alternative in the Fulton County land records, and we remand for further proceedings, including an evidentiary hearing, limited to the issues of permanent declaratory and injunctive relief and the Association's claim for costs and attorney fees. Of course, the trial court is free to reenter any of its earlier findings of fact, as warranted by its review of all the evidence in the case, as part of its final judgment.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Reese, P. J., and Markle, J., concur.*