BARON JAMAL HALE *vs.* ELCO ADMINISTRATIVE SERVICES.

No. 06-P-1396.

Plymouth. June 8, 2007. - August 28, 2007.

Present: GELINAS, DOERFER, & KAFKER, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist, Notice. *Notice,* Timeliness. *Contract,* Insurance.

In a civil action in which the plaintiff, who had been in a hit-and-run accident while driving a rented motor vehicle and had notified the car rental company of the accident the next day when returning the vehicle, sought uninsured motorist benefits from the defendant, the third-party claim administrator for the rental company, the Superior Court judge erred in granting summary judgment in favor of the defendant, where the plaintiff gave prompt notice of the occurrence of the accident, and symptoms that led to a possible claim for compensation for injuries did not arise until after that notice, and where the car rental company had enough information to allow the defendant to begin a timely investigation of the causes and consequences of the accident; accordingly, the plaintiff was entitled to summary judgment and to proceed to arbitrate his claim for uninsured motorist benefits. [880-884]

CIVIL ACTION commenced in the Superior Court Department on May 23, 2005.

The case was heard by *Suzanne V. DelVecchio,* J., on a motion for summary judgment.

*Daniel M. Hutton* for the plaintiff.

*Christopher M. Jantzen* for the defendant.

DOERFER, J. We determine that the notice of an accident given by the renter of an automobile the day after the accident was not so deficient as to deprive him of the benefits of uninsured motorist (UM) coverage, and reverse the summary judgment granted to the defendant.

*Facts.*[1] On January 3, 2004, the plaintiff, Baron Jamal Hale,

---

[1] We draw the facts from the summary judgment record.

rented an automobile from Enterprise Rent-A-Car Company of Boston, Inc. (Enterprise), at their branch located in Brockton, and signed a rental contract. Although only the face of the contract is included in the record, the parties agree that the plaintiff was entitled to and did purchase UM coverage pursuant to a motor vehicle liability bond under G. L. c. 90, § 34A, which applies to Enterprise as a self-insurer.[2]

The plaintiff returned the vehicle to Enterprise in Brockton on January 5, 2004, with evident damage. He reported that he had been in a hit-and-run accident in Providence, Rhode Island, the previous day. There is no dispute that Enterprise received such notice. At that time the plaintiff did not believe he was seriously injured, only that he was experiencing some numbness in his knees. He did not report or make any claim of physical injuries when returning the vehicle. Headache, neck, and back pain later developed.

The plaintiff called the Boston police department on January 5, 2004, to report the accident and was advised to make a report to the police in Providence, which he did, in writing, on January 7, 2004. He made no mention of any personal injuries in this report.

The defendant, Elco Administrative Services,[3] sent the plaintiff a letter dated February 3, 2004, at the address he had listed in his rental agreement, inquiring as to the details of the accident. A follow-up letter, dated February 18, 2004, was sent to the same address. The plaintiff was not staying at that address, but was staying at another address in Brockton.[4] The defendant sent the plaintiff a letter dated April 30, 2004 (this time mailed to the address where he was staying), requesting that he appear for an independent medical examination (IME). The plaintiff appeared for the IME on May 12, 2004.

On January 12, 2004, the plaintiff went to Maximum Rehabilitation and began receiving physical therapy treatment

[2]The statute applies the same limits of liability as found in part 3 of the standard Massachusetts automobile insurance policy, seventh edition.

[3]The defendant is the third-party claim administrator for Enterprise.

[4]On appeal, the defendant does not make any arguments based on the fact that the plaintiff was staying at a location other than his address when these inquiries were sent, or argue that the address given in the rental agreement was not his address.

approximately three times per week. The plaintiff continued his physical therapy treatment with Maximum Rehabilitation until March 8, 2004. The treatment consisted of moist heat, electrical stimulation, massage, and therapeutic exercise.

The IME medical examiner diagnosed the plaintiff with a cervical spine and lumbar sprain, and concluded he had an excellent prognosis for full recovery. Based upon the documentation reviewed[5] and the patient history, the examiner determined that a causal relationship existed between the accident and the injury, that the plaintiff did not have any permanent impairment, and that the plaintiff had reached a medical end result and did not require further treatment. Although the examiner noted some inconsistencies between the plaintiff's statements and the treatment notes, he stated that the treatment appeared to be "reasonable and appropriate" overall, with the exception that certain treatment was duplicative.

In a letter dated May 7, 2004, the plaintiff's attorney corresponded with the defendant, asserting a claim for UM benefits based on the plaintiff's personal injuries. Further correspondence ensued.

At some point (the date is not reflected in the record) the plaintiff made a claim for personal injury protection benefits for lost wages from the defendant. The defendant sent checks to him dated September 16, 2004, and September 23, 2004, in payment of such benefits.

Although the defendant made an offer to settle the plaintiff's UM benefits claim, the negotiations were not successful. On May 23, 2005, the plaintiff filed a complaint in Superior Court, seeking a determination that he was entitled to UM benefits from the defendant, see G. L. c. 175, § 113L, and demanding arbitration, see G. L. c. 251, §§ 1 et seq. The defendant moved for summary judgment on the grounds that it was entitled to deny UM benefits because the plaintiff had not given timely notice of his personal injuries and that the defendant was materially prejudiced by its inability to conduct an IME before the plaintiff's injuries had reached an end point.

*Discussion.* On summary judgment, the defendant argued that

---

[5]The examiner only had documentation for treatment from January 12, 2004, through February 9, 2004.

the plaintiff did not provide notice of his claim for coverage of his personal injuries until May 7, 2004, more than four months after the accident, and that such belated notice violated the requirements of the terms under which the UM insurance was provided.[6]

What constitutes timely notice under an insurance policy is a matter of contract interpretation and therefore is to be decided as a matter of law. *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 634 (1992). The burden of proving that notice was prompt is on the insured. *Ibid.*

The standard Massachusetts automobile insurance policy, seventh edition, which the parties cite as the applicable document,[7] contains the following relevant language:

> "We must be given sufficient notice of claim to conduct a reasonable investigation and attempt settlement before arbitration can be filed."

The policy also states:

> "Within 24 hours, notify both the police and us if . . . you have been involved in a hit-and-run accident. . . . We, or our agent, must be notified *promptly* of the accident or loss by you or someone on your behalf. The notification should include as many details as possible, including names and addresses of drivers, injured persons and witnesses" (emphasis supplied).

The parties agree that the day after the accident, on January 5, 2004, the plaintiff informed Enterprise of the hit-and-run accident, which had occurred on January 4, 2004. It does not appear that the plaintiff was requested to fill out any form or to provide any particular information upon return of the automobile

---

[6]The defendant acknowledges that untimely notice is not sufficient to excuse coverage, and that it must prove material prejudice resulting from the delay. In view of our analysis, we need not consider the prejudice issue further.

[7]While the policy language in the standard policy is relevant to our discussion, its application is tempered by the fact that the record does not reflect that the plaintiff ever was made aware of or given a copy of the policy terms. This case presents an unusual situation where a party obtained automotive insurance solely for the purpose of using a rented vehicle for a brief period of time. As the parties do not press the point we only note it in passing.

to Enterprise. However, damage was evident on the front left corner of the vehicle. Because the plaintiff did not mention any personal injuries when he returned the vehicle to Enterprise in Brockton, nor when he filed a report with the Rhode Island police, the defendant contends that the only notice satisfying the policy requirement did not occur until May 7, 2004, when the plaintiff's attorney sent a letter requesting UM benefits to cover the plaintiff's personal injuries.

We are aware of no Massachusetts case holding that notice of an accident provided the next day does not constitute prompt notice under the terms of the standard Massachusetts policy here in question. Insurance cases concerning delayed notice generally involve plaintiffs who do not inform the insurer of any occurrence until well after the event. See, e.g., *Brackman* v. *American Employers' Ins. Co.*, 349 Mass. 767, 767 (1965) (notice provided forty days after knowledge of the occurrence not "as soon as practicable"); *Darcy* v. *Hartford Ins. Co.*, 407 Mass. 481, 487 (1990) ("admittedly unseasonable notice" when insurer did not find out about accident until five years after it occurred); *Royal-Globe Ins. Co.* v. *Craven, supra* at 633-634 (notice given three months after release from a hospital stay and four months after the accident was not prompt); *Eastern Prod. Corp.* v. *Continental Cas. Co.*, 58 Mass. App. Ct. 16, 21, 23 (2003) (notice provided seven years after knowledge of potential environmental danger caused by fires was not timely). But see *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558, 565 (1972) (notice provided one month after accident was timely because of layperson's ignorance of whether insurer's coverage applied and insurer's agent's failure to inform insured of possible coverage). The purpose of prompt notice is to give the insurer the "opportunity to investigate the cause and nature of a claim or occurrence while the facts are still fresh in the minds of the parties and while the physical evidence of the occurrence is still fresh." *Eastern Prod. Corp.* v. *Continental Cas. Co., supra* at 22, quoting from *Fireman's Fund Ins. Co.* v. *Valley Manufactured Prod. Co.*, 765 F. Supp. 1121, 1126 (D. Mass. 1991). The content of that notice must simply provide sufficient information for the insurer to begin that investigation. See 13 Couch, Insurance § 189:5 (3d ed. 2005) (the "notice must provide enough information for the insurer to begin its investiga-

tion of the circumstances and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay"); 2 Widiss, Uninsured and Underinsured Motorist Insurance § 16.2, at 4 (3d ed. 2005) ("The primary purpose of a notice requirement is to enable the insurer to make a timely and thorough investigation of an occurrence, as well as its consequences"). As instructive, see also *Hamm* v. *Ledesma*, 184 Ga. App. 237, 238 (1987) ("The question to be decided here . . . is whether the insurer was given sufficient information so that it could make the appropriate decisions with regard to investigating the loss"); *Rooney* v. *State Farm Mut. Auto. Ins. Co.*, 119 Ill. App. 3d 112, 116 (1983) ("The primary purpose of such a notice requirement is to enable the insurer to make a timely and thorough investigation of a claim and to protect itself against unjustifiable claims").

Here, the plaintiff notified Enterprise of the accident the day after the accident when he returned the automobile, which had obvious damage to the front. While he did not mention any personal injuries to Enterprise at that time, the plaintiff merely was experiencing some numbness in his knees, a problem that did not become the subject of medical treatment. Other symptoms had not emerged by that day. In essence, when the plaintiff returned the vehicle, he knew of no injury to report. The UM policy does not state a continuing duty to inform the insurer of changes in physical condition days after the accident, nor will we imply one.[8] The plaintiff did give prompt notice of the occurrence of the accident. Symptoms that led to a possible claim for compensation for injuries did not arise until after that notice.

The day after the hit-and-run accident, Enterprise had in its possession a copy of the plaintiff's driver's license number, his home and office telephone numbers, and the information that in Providence, Rhode Island, an unidentified driver had hit the rented vehicle, which was available for inspection. This was sufficient information for the defendant to begin a timely

---

[8]The plaintiff's statement in his deposition, that he believed there was "no reason . . . to tell" Enterprise of the injury, also is consistent with his lack of knowledge as to any of the terms of the standard insurance policy, including that he had insurance that would cover the kind of discomfort he was experiencing.

investigation of the causes and consequences of the accident. Thus, we conclude, no more was required from the plaintiff in this case.[9]

There being no genuine issue of material fact in dispute relating to the plaintiff's entitlement to proceed to arbitrate his claim for UM benefits, we reverse the summary judgment entered in favor of the defendant and remand for the entry of summary judgment in the plaintiff's favor, directing that his claim for UM benefits proceed to arbitration.[10]

*So ordered.*

---

[9]We note that the defendant did send the plaintiff letters in February of 2004 and had learned enough by April 30, 2004, to send him a request for an IME.

[10]We may order entry of summary judgment against the moving party under Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002), where there is no genuine issue of material fact and the parties have had an adequate opportunity to address the issues. See *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.,* 415 Mass. 381, 385 (1993); *Good* v. *Commissioner of Correction,* 417 Mass. 329, 336 n.7 (1994); *Doyon* v. *Travelers Indem. Co.,* 22 Mass. App. Ct. 336, 339 (1986).