NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-917                                        Appeals Court


        LINDA HAWLEY & another[1]  vs.  PREFERRED MUTUAL INSURANCE
                            COMPANY.


                        No. 14-P-917.

        Hampden.     April 10, 2015. - September 16, 2015.

            Present:  Cypher, Trainor, & Katzmann, JJ.



Insurance, Reference process, Arbitration, Coverage, Water
     damage.  Contract, Insurance.  Consumer Protection Act,
     Insurance, Unfair act or practice.  Limitations, Statute
     of.  Practice, Civil, Statute of limitations, Consumer
     protection case.



     Civil action commenced in the Superior Court Department on
June 2, 2008.

     The case was heard by Cornelius J. Moriarty, II, J.


     James E. Grumbach for the plaintiffs.
     Jeffrey L. McCormick for the defendant.


     KATZMANN, J.  This appeal arises from a dispute between an

insurer and its insured, based on a denial of coverage for water

damage, and largely concerns the question whether the insured's

_____

     [1] Robert Hawley.

mere request for a reference for arbitration pursuant to G. L.
c. 175, § 99, Twelfth, as appearing in St. 1951, c. 478, § 1,
operates to toll the statute of limitations period contained in
§ 99 and incorporated by the insurance policy.[2]  We conclude that
it does not.

On November 12, 2012, after a seven-day bench trial, a
Superior Court judge issued a ruling in favor of the defendant,
Preferred Mutual Insurance Company (Preferred), on a breach of
contract claim and an unfair and deceptive insurance practices
claim under G. L. c. 93A and G. L. c. 176D.  The decision was
based on the grounds that the breach of contract claim was
barred by the statute of limitations and that there were no
facts to support the claim that Preferred acted unfairly or
deceptively in denying the insurance claim or in its failure to
proceed to reference.  A second amended judgment entered on
February 11, 2013, and the insureds, Linda and Robert Hawley
(the Hawleys), appealed.  We affirm on the grounds that (1) the
breach of contract claim was filed outside the statute of
limitations, as the request for reference did not toll the
statute of limitations, and, even if it had, the complaint was

---

[2] Reference is a form of arbitration used to determine the
value of the loss.  See G. L. c. 175, § 99, Twelfth.  For
further interpretation of the statutory term "reference," see
Augenstein v. Insurance Co. of N. America, 372 Mass. 30, 34-37
(1977).

not filed within a reasonable time after the denial of the request for reference; and (2) because the loss at issue did not fall within the policy, the c. 93A and c. 176D claims also fail.

Background. The facts as found by the Superior Court judge are as follows. Linda Hawley owns the dwelling at issue and Robert Hawley manages it. The dwelling is a three-family house which the Hawleys use as a rental property, not as their personal residence.[3] Preferred issued a dwelling insurance policy covering the property from November 14, 2003, to November 14, 2004. Both Linda and Robert[4] are named insureds on the policy.

On or about June 11, 2004, a water loss occurred in the dwelling at issue. The son of the Hawleys' first-floor tenant, Sylvia Horton, called to report a leak coming from the ceiling above the bathtub. Shortly thereafter, the ceiling collapsed. Robert promptly contacted his insurance agent to report the loss, and the agent, in turn, notified Preferred. Preferred retained Richard Zak, an outside independent adjuster, who inspected the property some thirteen days later, on June 24,

---

[3] The Hawleys' involvement in the business of leasing and managing residential units is categorized as "conduct of . . . trade or commerce" within the meaning of G. L. c. 93A, § 11. See G. L. c. 93A, § 1(b), as appearing in St. 1972, c. 123.

[4] For the sake of clarity, we refer to the plaintiffs by their first names.

2004.  On June 29, 2004, Zak forwarded a report to Elvie Smith, Preferred's inside claim representative, informing Smith of water and mold damage to the first and second floor bathrooms and noting that the cause of the damage appeared to be a broken shower head pipe.  On July 11, 2004, Robert discovered that the leak was actually the result of the second-floor shower door falling into the bathtub, creating a hairline crack in the bathtub.  He informed Preferred of the update.  After further investigation, Preferred concluded that continued use of the bathtub after the crack developed had allowed more water to leak, resulting in dangerous levels of mold.  Over the next few months there was debate and further investigation concerning the necessary remediation and whether Preferred would be covering any damages.  Zak noted that the tenants would need to relocate, and Smith stated that Preferred would help pay for the loss of rent, but would not pay the tenants' relocation expenses.  Preferred made some payments, including, on July 24, 2004, a $5,000 advance check for repairs and cleaning.  The Hawleys neither cashed the check nor started repairs.

On November 8, 2004, Preferred notified the Hawleys that it was denying the claim.  The denial was based on the Hawleys' failure to make repairs.  Preferred also implied in its denial that the leak had been ongoing for over a month, and expressly reserved the right to deny coverage based on the policy's

exclusions.  Some one and one-half years later, on May 26, 2006, the Hawleys, through counsel, sent Preferred a thirty-day c. 93A demand letter alleging violations of c. 93A and c. 176D.  On June 5, 2006, five days before the two-year statute of limitations provided by G. L. c. 175, § 99, was set to expire, the Hawleys sent Preferred a request for reference.  Thirty-four days later, on July 10, 2006, Preferred responded with a letter declining the request for reference.  That same day it also responded to the demand letter, denying any violation of c. 93A or c. 176D, and accordingly declined to make an offer of settlement.  Before filing suit, the Hawleys made three additional demands for reference.  Preferred's repeated and final response, made on August 31, 2006, was to decline to proceed to reference.  The Hawleys also sent a second demand letter under c. 93A, in response to which Preferred again denied liability and refused relief.  On June 2, 2008, nearly four years after the loss, the Hawleys filed suit.

Discussion.  1.  Standard of review.  "We accept the judge's findings in a bench trial unless they are clearly erroneous."  Weiler v. PortfolioScope, Inc., 469 Mass. 75, 81 (2014), quoting from Makrigiannis v. Nintendo of America, Inc., 442 Mass. 675, 677 (2004).  "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which

the judge applied to the facts." Makrigiannis, supra at 677-678.

2. Breach of contract claim. a. Statute of limitations.[5] The Hawleys argue that their request for reference tolled the statute of limitations.[6] We disagree.

The relevant statute governing the interface of reference and the tolling of the statute of limitations for insurance claims, G. L. c. 175, § 99, Twelfth, provides in pertinent part:

> "No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties."

---

[5] We address the statute of limitations only as to the breach of contract claim because the two-year statute of limitations under the policy and c. 175, § 99, Twelfth, does not apply to c. 93A claims grounded in c. 176D. See Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 676-677 (2001) (four-year statute of limitations applies to actions under c. 93A and c. 176D).

[6] Both in their brief and at oral argument, the Hawleys purported to quote from McDowell v. Aetna Ins. Co., 164 Mass. 444, 447 (1895) ("[i]n this case, the policy, . . . as mandated by Mass. Gen. L. c. 175, § 99, allows for a tolling of the limitations period if the insured initiated the reference process timely, which the plaintiff generally did"). However, that quote does not appear in McDowell; nor does it appear in any appellate decision.

The language of the policy tracks the statute and provides in pertinent part:

> "No action can be brought unless the policy provisions have been complied with and the action is started within two years after the date loss or damage occurs. . . . If a disagreement about the amount of loss has been referred to a board of referees within two years of the date of loss, any action against us must be started within 90 days after the board's decision."

The Hawleys filed their complaint after the two-year statute of limitations, governed both by c. 175, § 99, and the insurance policy at issue, had expired. See G. L. c. 175, § 99, Twelfth.

To begin with, we note that it is well settled that the statute of limitations starts to run at the time the loss occurred. See J. & T. Enterprises, Inc. v. Liberty Mut. Ins. Co., 384 Mass. 586, 586-587 (1981) (barring suit brought more than two years after property was damaged by fire). See also Gallant v. Federal Mut. Ins. Co., 354 Mass. 146, 147 (1968) (date of the loss was the day plaintiffs' store was struck by a motor vehicle). See generally Nunheimer v. Continental Ins. Co., 68 F. Supp. 2d 75, 78 (D. Mass. 1999) ("loss" means the "incident causing the damage to the property"). In this case, the loss occurred on June 11, 2004, and the statute of limitations expired on June 10, 2006, nearly two years before the Hawleys filed a complaint.

While, pursuant to G. L. c. 175, § 99, Twelfth, the statute of limitations may be tolled in circumstances in which the matter has been referred to arbitration through the reference procedure, § 99 does not provide for tolling where the reference procedure has not yet begun.  Here, the Hawleys' request for reference was made on June 5, 2006, some five days before the statute of limitations expired.  We note, however, that G. L. c. 175, § 100, allows the insurer ten days to respond to a request for reference, and another ten days thereafter for the insured to reply.  Section 100 provides, in pertinent part:

> "[I]f the parties fail to agree as to the amount of loss, the company shall, within ten days after receiving a written demand from the insured for the reference of the amount of loss . . . submit in writing the names and addresses of three persons to the insured, who shall, within ten days after receiving such names notify the company in writing of his choice of one of the said persons to act as one of said referees."

Knowing that their belated request for reference might well take them past the two-year statute of limitations, it was open to the Hawleys to file their complaint timely, while requesting, under the provisions of § 99 and the policy, that the court delay commencement of the action.  General Laws c. 175, § 99, Twelfth, provides, in pertinent part:

> "If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action."

Section 11 of the policy provides, in pertinent part:

> "[I]f a court prevents the start or continuance of the action, but at a later date allows the action to resume, it must be resumed within one year of the court order."

We conclude that where § 99 has provided a specific mechanism to allow for the delay of an action when deemed appropriate by the court, there is no need for us to provide any additional vehicle for tolling the statute of limitations. Therefore, the Hawleys' mere request for a reference did not operate to toll the limitations period contained in G. L. c. 175, § 99, Twelfth.[7]

b. Not filed reasonably promptly. Even if we had concluded that the request for reference did toll the statute of limitations, the Hawleys waited nearly another two years after being denied reference before filing the complaint. Relying on the determination in Trust Ins. Co. v. Commissioner of Ins., 48 Mass. App. Ct. 617, 625 (2000) (citation omitted), that when we determine what qualifies as a reasonable amount of time for commencing a suit, we look at the "facts and circumstances of each particular case," the Hawleys argue that we must consider

---

[7] We note also that while count II of the Hawleys' complaint sought an order requiring Preferred to comply with the policy's reference procedure, this was a "claim by virtue of [the] policy," G. L. c. 175, § 99, Twelfth. It thus was subject to the two-year limitations period, and, hence, was untimely. In any event, the Hawleys subsequently waived this claim.

that Preferred's conduct "lulled the Hawleys into a reasonable belief, over a protracted period of time, that there was no urgency in their filing suit." Preferred argues, and we agree, that while it did engage in an investigation to determine whether there was a loss under the policy, and made some payments prior to determining the actual cause of the loss, it consistently denied liability, and, further, the fact that the Hawleys repeatedly submitted requests and demands did not mean that Preferred accepted the loss.

"We perceive no conduct by the compan[y] or [its] agents . . . which gives basis for a contention that the compan[y] had permanently estopped [itself] to rely on the provisions of the polic[y]." Gallant v. Federal Mut. Ins. Co., 354 Mass. at 150. As the judge noted below, although the Supreme Judicial Court in Gallant acknowledged that where insurers have not conclusively denied coverage until after the statute of limitations has passed, they may be equitably estopped from raising a statute of limitations defense, the plaintiffs still must commence the case within a reasonable time. See id. at 151. Similarly, in our view, even under the Hawleys' theory of tolling based on their request for reference, they cannot recover because they did not commence the action reasonably promptly after July 10, 2006, when Preferred sent its first denial of the demand for reference. Compare ibid. (plaintiffs barred from recovery

because they did not commence action "reasonably promptly" after the insurance companies denied liability, waiting some eleven months to do so; "even if it be assumed that they were not already barred by the two year limitation, it became plain that the [insurers] denied all liability and that it would be necessary to sue the [insurers] if the plaintiffs were to obtain any settlements of the loss"). As such, commencing suit nearly two years after denial of the request for reference was not within a reasonable amount of time.

c. Loss not covered. Although we have determined that the Hawleys' breach of contract claim is barred by the statute of limitations, we consider the merits of the claim, as it forms the basis of the c. 93A and c. 176D claims.

We agree with the judge's interpretation and application of the insurance policy, concluding that the loss here was excluded. The policy provides in relevant part that Preferred does not cover a loss that is caused by "constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or from within a household appliance." In their brief, the Hawleys argue that the bathtub was not a part of the plumbing system, a point the judge explicitly rejected, and that therefore the loss resulting from the bathtub leaking was not excluded. However,

at oral argument, the Hawleys' counsel acknowledged that the bathtub was part of the plumbing system. Because the loss here was caused by a consistent leak over a period of weeks "from within [the] plumbing . . . system," we agree with the judge that the loss is specifically excluded by the policy.

The Hawleys also contest the conclusion that the loss was caused by a consistent leak rather than being a sudden loss. They argue that one of Preferred's reasons for denying the claim, that the leak "may have been on-going for approximately one month," is contrary to evidence provided by Robert, Zak, Kevin Davis (Preferred's engineer), and Mark Doughty, an environmental hygienist retained by Robert. Doughty reported or testified to information consistent with "sudden event" coverage, the sudden event being the breaking of the shower door, rather than "constant or repeated seepage or leakage," which is excluded from coverage. We conclude that, even if the initial event was "sudden," evidence showed that the leak that caused the loss at issue was ongoing. The judge did not err in concluding that there was a reasonable factual basis to support this determination. This factual basis included, among other evidence, Doughty's testimony in response to the judge's question whether the concentration of mold found could have come about as a result of a one-time sudden event or if it was more likely than not that the mold was the result of persistent

seepage into the area.  Doughty testified that either time frame was possible, but also stated, "I don't think this existed months; I think maybe weeks."[8]

3.  Claims under c. 93A and c. 176D.  Because we have concluded that the Hawleys' loss was not covered, and thus liability was not reasonably clear, the Hawleys' c. 93A and c. 176D claims must also fail; these claims are predicated on Preferred's breach of the underlying insurance policy.[9]  Even if

---

[8] Zak's report indicated that the crack may have been due to the shower door falling into the tub approximately one month before the loss occurred, which caused consistent leaking. Horton, the first-floor tenant, reported to Zak that she had noticed the leaking, in the form of condensation on the ceiling, for about a month prior to the ceiling collapse.  The condensation was followed by a steady flow of water and the ceiling collapse.  After Horton's report, Zak examined the area and saw evidence of water on the floor and stains on the ceiling.  Davis's report also supported the position that the leak was ongoing.  The report states:

> "The cause of the mold is likely due to the water leak found at the tub on the second floor.  This was the only source of water found in the second floor bathroom.  By the staining found on the wood it appears that the water leak has been ongoing for a long period of time however it would be difficult to estimate the length of time that the leak has been in existence."

[9] "General Laws c. 93A, § 2(a), [inserted by St. 1967, c. 813, § 1,] states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.'  General Laws c. 176D, § 3, in turn, prohibits 'unfair or deceptive acts or practices in the business of insurance,' including, in subsection (9)(f), the failure 'to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.' . . . '[T]he former statute incorporates the latter, and [accordingly] an insurer that has

the policy covered the loss of June 11, the Hawleys have not established a claim under c. 93A.  While "[t]here is no binding definition of what constitutes an unfair practice under c. 93A," Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass. App. Ct. 443, 447 (1999), this appears to be a mere contract dispute, "without conduct that was unethical, immoral, [or] oppressive." Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 505 (1997).  "[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made."  Duclersaint v. Federal Natl. Mort. Assn., 427 Mass. 809, 814 (1998).  We agree with the judge's determination that "Preferred's denial of the claim was based, at least in part, on its belief that the seepage or leakage had

---

violated G. L. c. 176D, § 3(9)(f), by failing to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices.'"  Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 658-659 (2003), quoting from Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001).  "Those claiming injury by virtue of an insurance practice prohibited by G. L. c. 176D, § 3(9)(f), may sue under G. L. c. 93A."  Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 59 n.8 (2000).  We note that because the Hawleys engage in the "conduct of . . . trade or commerce," see note 3, supra, and therefore must assert their rights under c. 93A, § 11, a violation of G. L. c. 176D does not necessarily translate into a violation of c. 93A, but can serve as persuasive evidence of such a violation.  See Federal Ins. Co. v. HPSC, Inc., 480 F.3d 26, 35 (1st Cir. 2007), citing Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993).

been ongoing for a month."  See <u>Pacific Indem. Co</u>. v. <u>Lampro</u>, 86 Mass. App. Ct. 60, 68 (2014), quoting from <u>Clegg</u> v. <u>Butler</u>, 424 Mass. 413, 421 (1997) ("[o]ur decisions . . . in no way penalize insurers who delay in good faith when liability is not clear and requires further investigation"); <u>ibid</u>. (where insurer had no duty to indemnify, no liability under G. L. c. 176D, § 3[9][<u>f</u>]).[10]

<u>Second amended judgment</u>
<u>affirmed</u>.

---

[10] Nor, in these circumstances, do we think Preferred's late reply to the first request for reference constituted a c. 93A violation.  Compare <u>Trempe</u> v. <u>Aetna Cas. & Sur. Co</u>., 20 Mass. App. Ct. 448, 453-455 (1985).