NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-33

SARA CARPENTER, trustee,[1] & another[2]

vs.

ROBERTO L. DI MARCO & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Sara and Rebecca Carpenter, trustees of the Carpenter Trust (trust), appeal from an entry of summary judgment in favor of defendant Connecticut Attorneys Title Insurance Company (CATIC). Concluding that the summary judgment record establishes as a matter of law that CATIC acted with reasonable diligence in establishing the trust's mortgage lien

---

[1] Of the Carpenter Trust.

[2] Rebecca Carpenter, trustee of the Carpenter Trust.

[3] Walker & Di Marco, P.C.; Connecticut Attorney Title Insurance Company; and the Hanover Insurance Company. The plaintiffs appealed only from the portions of the judgment favorable to Connecticut Attorney Title Insurance Company. Accordingly, the other defendants did not participate in this appeal.

and removing an encumbrance on it and, therefore, could not be liable under the terms of the mortgage title insurance policy or G. L. c. 176D, we affirm.

1. Standard of review. "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.'" Mittas Early Learning, LLC v. MDC Props. - Westford Rd, LLC, 104 Mass. App. Ct. 615, 617 (2024), quoting Cottrell v. Laidley, 103 Mass. App. Ct. 483, 489 (2023). "The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact." Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002). "Once the moving party has met this burden, the opposing party is 'required to respond by "set[ting] forth specific facts showing that there is a genuine issue for trial."'" Hill-Junious v. UTP Realty, LLC, 492 Mass. 667, 672 (2023), quoting Kourouvacilis v. General Motors Corp., 410 Mass 706, 716 (1991). "In deciding a motion for summary judgment the court may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits." Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 506 (2019), quoting Niles v. Huntington Controls, Inc., 92 Mass. App. Ct. 15, 18 (2017).

2

2.  Insurance coverage.  a.  Principles of interpretation.
"Interpretation of an insurance policy is a question of law to
be determined by the court."  Certain Interested Underwriters at
Lloyds, London v. LeMons, 85 Mass. App. Ct. 400, 402 (2014),
quoting Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159
(2013).  We interpret the terms "according to the 'fair meaning
of the language used, as applied to the subject matter.'"
Norfolk & Dedham Mut. Fire Ins. Co. v. Quane, 442 Mass. 704, 707
(2004), quoting Davis v. Allstate Ins. Co., 434 Mass 174, 179
(2001).  "When in doubt as to the proper meaning of a term in an
insurance policy, we 'consider what an objectively reasonable
insured, reading the relevant policy language, would expect to
be covered.'"  Dorchester Mut. Ins. Co. v. Miville, 491 Mass.
489, 493 (2023), quoting Dorchester Mut. Ins. Co. v. Krusell,
485 Mass. 431, 437 (2020).  "A term is ambiguous only if it is
susceptible of more than one meaning and reasonably intelligent
persons would differ as to which meaning is the proper one."
Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass. App. Ct.
502, 505 (2004), quoting Citation Ins. Co. v. Gomez, 426 Mass.
379, 381 (1998).  "[A]n ambiguity is not created simply because
a controversy exists between the parties, each favoring an
interpretation contrary to the other."  Aquino v. United Prop. &
Cas. Co., 483 Mass. 820, 839 (2020), quoting Lumbermens Mut.
Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).

3

"If an insurance policy is unambiguous, its interpretation is appropriately decided upon summary judgment." Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006).

b. Contractual language. The instant title insurance policy is a mortgage title insurance policy, and it insured the trust's junior mortgage on a property in the principal amount of $180,000. The policy covers "against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the insured by reason of," among other things, "[a]ny defect in or lien or encumbrance on the Title" and "[t]he lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance." The policy, however, expressly eliminates CATIC's monetary liability where CATIC "establishes the Title, or removes the alleged defect, lien, or encumbrance, . . . or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method."

There was, in fact, such a lien on the property in the form of a recorded attachment for $1,559,000 in an unrelated Essex County Superior Court action. CATIC litigated the validity of the Essex attachment in Superior Court and obtained an order removing that attachment. Accordingly, CATIC established the priority of the insured mortgage lien and removed the Essex attachment as an encumbrance on the trust's insured mortgage.

4

To this, the trust argues that the policy required CATIC to "restor[e] Carpenter Trust's Priority in the Title of the Land," and that this was impossible after April 2016, when the senior mortgage holder (against which CATIC did not insure the plaintiffs) foreclosed on the property. This assertion is simply irreconcilable with the plain terms of the policy. The policy did not insure the trust's title in the property at all. The policy insured against "Title being vested other than as stated in Schedule A," and Schedule A stated that title was vested in Gail Johnson and Anju Patel as trustees of the Cross Realty Trust.

Moreover, the policy specifically stated that establishing title is one of several ways in which CATIC could fulfill its obligations. To read the policy, as the trust does, to prohibit CATIC from fulfilling its duties by removing the offending encumbrance or by establishing the trust's mortgage lien would ignore its plain language. See Cabot v. Cabot, 55 Mass. App. Ct. 756, 762 (2002), quoting Starr v. Fordham, 420 Mass. 178, 190 (1995) ("[T]he scope of a party's obligations cannot 'be delineated by isolating words and interpreting them as though they stood alone'").

c. "Reasonably diligent manner." That CATIC established the trust's mortgage lien and removed the encumbrance, however, is inadequate under the policy to protect it from monetary

5

liability unless it did so in a "reasonably diligent manner." Determining whether there was a genuine issue of material fact on this point requires an examination of the date CATIC received notice that the trust wished it to remove the Essex attachment.

In this regard, the policy provides that

"[t]he insured shall notify [CATIC] in writing . . . in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy."

It further requires that "[a]ny notice of claim and any other notice or statement in writing required to be given to [CATIC] under this policy must be given to [CATIC] at 101 Corporate Place, Rocky Hill, CT 06067-1895." Upon learning of the Essex attachment in July, the trust's beneficiary first contacted Attorney Roberto Di Marco, who was a "non-exclusive, limited agent only for the purposes of issuing title policies, endorsements, binders and commitments on behalf of CATIC . . . ." Although Attorney Di Marco contacted CATIC about the Essex attachment on August 14, 2015, the trust's beneficiary eventually "contacted [his own] attorney to formally proceed with a claim." On November 13, 2015, the trust's attorney sent a letter that "constitute[ed] notice of the claim" to CATIC.

Formal notice of the claim, as required under the policy, came on November 13, 2015, and no earlier. See Hale v. Elco

6

Admin. Servs., 69 Mass. App. Ct. 878, 881 (2007) ("What constitutes timely notice under an insurance policy is a matter of contract interpretation and therefore is to be decided as a matter of law"). Nowhere did the policy suggest that notice to Attorney Di Marco was sufficient, and, besides, Attorney Di Marco had no duty to CATIC concerning this policy after issuing the insurance policy on May 22, 2015. Moreover, the notice to Attorney Di Marco did not request that CATIC remove the Essex attachment; indeed, it suggested that liability for the trust's damages should be borne by Attorney Di Marco and his insurers. Nor would it have been obvious in this complicated situation involving a senior mortgage that the trust desired the removal of the Essex attachment instead of preferring to proceed against Attorney Di Marco.

As of July 29, 2015, the trust had received the title policy. Although the parties dispute when the trust received the entirety of the policy jacket, there is no assertion that CATIC refused a request by the trust for the policy jacket. Accordingly, the trust's failure to obtain and read the policy language is immaterial. Good v. Uber Techs., Inc., 494 Mass. 116, 141-142 (2024) ("[D]emanding that the offeror highlight particular terms . . . ignores the well-established and widely recognized principle that offerees have a duty to read the terms of a contract to which they assent and are not excused from a

7

contract's terms solely by virtue of having chosen not to do so").[4]  By the plain terms of the policy, CATIC was not on notice that the trust wanted it to remove the Essex attachment until November 13, 2015.  See Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995) ("When the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms").  See also Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 465 Mass. 741, 748 (2013), quoting Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352 (2011) ("Every word . . . 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable'").

On November 20, 2015, a week after receiving formal notice from the trust, CATIC's claims counsel sent a detailed request

---

[4] Moreover, the trust's beneficiary, who has spent over sixty years in asset-based lending, stated that what he received from Attorney Di Marco was sufficient and that he does not even read insurance policies.  See Gargano v. Liberty Int'l Underwriters, Inc., 575 F. Supp. 2d 300, 306 (D. Mass. 2008), aff'd, 572 F.3d 45 (1st Cir. 2009), quoting Vinnie's Wholesale Fish Market, Inc. v. Canadian Marine Underwriters, Ltd., 441 F. Supp. 341, 344 (D. Mass. 1977) ("Courts squarely addressing [the] issue [of physical delivery of insurance policies] under Massachusetts law have held that 'neither delivery nor actual possession by the insured is essential to the making of an insurance contract unless the contract expressly sets out a requirement of delivery'").  See also Simon v. National Union Fire Ins. Co. of Pittsburgh, PA, 57 Mass. App. Ct. 350, 354 (2003), quoting Aguiar v. Generali Assicurazioni Ins. Co., 47 Mass. App. Ct. 687, 690 (1999) (an insured "is charged with his agent's knowledge of the terms and conditions of an insurance policy").

to the trust for further information about the claim. The trust responded to CATIC's request roughly six weeks later, on December 30. On January 14, 2016, CATIC assigned Attorney Dina Swanson to represent the trust in seeking to dissolve the Essex attachment. On January 19, Attorney Swanson intervened in the related bankruptcy proceedings, moving for relief from the automatic bankruptcy stay to challenge the Essex attachment. By April, Attorney Swanson had moved to dissolve the Essex attachment in Superior Court. The senior mortgage holder foreclosed on the property about two weeks later.[5] On August 2, 2016, the Superior Court held that the Essex attachment was invalid (and that a later attachment was subordinate to the trust's mortgage). This order took effect thirty days later.

The trust argues that reasonable diligence required CATIC to invalidate the Essex attachment prior to the foreclosure sale. Again, the plain language of the contract does not support this interpretation. The contract explicitly excludes the senior mortgage from the risks it was covering, and nothing in the contract states that CATIC had to perform its duties before the senior mortgage holder acted. To the contrary, the

---

[5] In October 2016, the bankruptcy court established that the trust, as second priority, would receive the remainder from the foreclosure sale. The surplus totaled approximately $100,000, but the senior mortgage holder incurred legal fees and interest that ultimately reduced the surplus to $6,666.90. The attachment itself did not reduce the trust's recovery.

9

contract specifically states, "in a reasonably diligent manner by any method, including litigation and the completion of any appeals."  The policy specifically contemplated that the cure could take a considerable amount of time, including the time to complete an appeal of any trial court action.  See Krumsiek v. Collins Elec. Co., 105 Mass. App. Ct. 214, 219 (2025), quoting Rubin v. Murray, 79 Mass. App. Ct. 64, 75-76 (2011) ("In interpreting a contract, [t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.  The words of a contract must be considered in the context of the entire contract rather than in isolation").

There is no genuine issue of material fact concerning whether CATIC acted with reasonable diligence as contemplated by the policy.  CATIC responded to the trust's claim immediately and, within a month of receiving the information it had requested from the trust, assigned counsel to litigate the validity of the Essex attachment.  Within five days of assignment, counsel began the steps necessary to remove the attachment.  Then, all within one year of formal notice, CATIC successfully removed the attachment.  Nowhere does the summary judgment record provide support for the proposition that CATIC could have removed the attachment prior to the foreclosure sale.  To the contrary, the foreclosure sale was originally set to

10

occur before Attorney Swanson's assignment.  Finally, CATIC's decision not to act until it had received formal notice from the trust was neither unreasonable nor lacking in diligence.  See Partington Bldrs., LLC v. Nautilus Ins. Co., 654 F. Supp. 3d 44, 58 (D. Mass. 2023) ("An insurer's duty to fund the defense of its insured is triggered when the insured provides notice of the claim to the insurer").  See also Massachusetts Port Auth. v. Johnson Controls, Inc., 54 Mass. App. Ct. 541, 545 (2002) ("Ostensibly, the purpose of the notice provision is to allow the [insurer] the opportunity to protect its interests").  There is no genuine issue of material fact regarding whether CATIC "fully performed its obligations" under § 9(a) of the policy, and thus CATIC was entitled to judgment as a matter of law.

3.  Unfair and deceptive business practices.  "'Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear' is an unfair claim settlement practice."  Chiulli v. Liberty Mut. Ins., Inc., 97 Mass. App. Ct. 248, 255 (2020), quoting G. L. c. 176D, § 3 (9) (f).  "[A]n insurer that has violated G. L. c. 176D, § 3 (9) (f), . . . by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices."  Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001).  "[I]nsurers do not have an obligation to settle as to an insured whose liability is not

11

reasonably clear." O'Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001). In its November 13 notice to CATIC, the trust stated that liability was "absolutely certain," but "[i]nsurers must be given the time to investigate claims thoroughly to determine their liability." Clegg v. Butler, 424 Mass. 413, 421 (1997). Upon investigation, CATIC, with reasonable diligence, cured the defect. With the attachment thus removed, liability was not reasonably clear. To the contrary, under the policy, CATIC could "not be liable for any loss or damage caused to the [trust]."

The trust also contends that CATIC violated G. L. c. 93A by (1) failing to disclose to the Superior Court judge addressing the validity of the Essex attachment that the foreclosure sale on the property had occurred and (2) failing to consider the August 14, 2015, e-mail message from Attorney Di Marco as notice of the trust's claim under the policy. Both contentions fall short. First, CATIC was permitted to use "any method" in performing its duty to establish the priority of the trust's mortgage lien and to eliminate the encumbrance on it. Dissolving the attachment was a valid means of performance under the policy.[6] Second, CATIC did not have formal notice pursuant

_____

[6] The trust asserts that CATIC's failure to inform the Superior Court judge about the foreclosure sale prevented the judge from learning that the "Carpenter Mortgage . . . ceased forever to be a lien on the Property." It is hard to understand

12

to the policy until November 13, and, as soon as the trust made the claim, CATIC acted in a reasonably diligent manner. Attorney Di Marco's August e-mail message regarding a potential claim from the trust neither complied with the plain terms of the policy nor demanded that CATIC act.  See Hawley v. Preferred Mut. Ins. Co., 88 Mass. App. Ct. 360, 368 (2015), quoting Duclersaint v. Federal Nat'l Mtge. Ass'n, 427 Mass. 809, 814 (1998) ("[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which

---

why counsel that CATIC assigned was required to do this.  After a senior lienholder forecloses on a property, "[a] junior lienholder has an equitable lien, transferred from the foreclosed premises, that attaches to the foreclosure surplus." Perry v. Blum, 629 F.3d 1, 14-15 (1st Cir. 2010).  The same is true of the attachment.  See General Bldrs. Supply Co. v. Arlington Co-op. Bank, 359 Mass 691, 696-697 (1971), quoting Hillside Co-op. Bank v. Cavanaugh, 232 Mass. 157, 161 (1919) ("However the law may be elsewhere it is settled in this Commonwealth that 'An attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase and takes precedence of a prior unrecorded deed'").  The Superior Court judge's order had the desired effect (desired by both CATIC and the judge) of eliminating the Essex attachment's senior interest to that of the trust's, which was precisely CATIC's duty under the policy.

c. 93A claim is made").  Accordingly, the Superior Court judge correctly entered summary judgment for CATIC.

Judgment affirmed.

By the Court (Ditkoff,
  D'Angelo & Wood, JJ.[7]),

Clerk

Entered:  January 13, 2026.

---

[7] The panelists are listed in order of seniority.